Case No. 22-7204, Terry V. Wright, Avalanche v. Eugene & Agnes E. Meyer Foundation, and Nicola O'Gorin. Mr. Sells for the Avalanche, Ms. Davies for the Avalanche. Good morning, Your Honors, and may it please the Court, my name is Derek Sells, and I'm very proud to be representing Dr. Terry Wright in this matter. Today I'd like to present four issues. Number one, related to the dismissal of her complaint. That the district court error when it dismissed a complaint in claim for violation of 42 U.S.C. section 1981, where the facts in the complaint admitted a reasonable inference that defendant O'Gorin disparaged her in violation of the party severance agreement because of racial. Second, that the district court erred under federal rule of civil procedure 1286 when it dismissed plaintiff's complaint in claim for violation of 42 U.S.C. section 1981, where the complaint provided defendants with fair notice of the basis for her section 1981 claim. Third, that the district court erred when it dismissed plaintiff's complaint in claim for breach of contract, where the complaint properly pleaded defendants breached the mutual non-disparagement provision of the party severance agreement, and the district court wrongly held that no such breach occurred, and therefore nullified the terms of the non-disparagement provision of the contract. And then, fourth, that the district court erred under federal rule of civil procedure 1286 when it utilized the common interest privilege to dismiss plaintiff's complaint in claim for defamation, where the common interest privilege is defeated by the complaint's allegations of intentional racial discrimination, and where there was no common interest between defendants and non-party. Mady Henson, Dr. Mady Henson. Can I clarify your section 1981 claim, counsel? If you don't prevail that there was actually at least adequately pled a breach of contract, then you can't prevail on the 1981 claim, right, because you have to interfere with a contract, and if there's no contract, then you can't have the 1981 violation, right? Am I right about that? Yeah. Your Honor, we respectfully disagree with that. I think under the Fair Notice Division case law that we've given notice that this is a 1981 violation, regardless of whether or not there was a breach of the severance agreement. Here, we allege that Dr. Wright was treated differently than white employees of the Meyer Foundation, and in particular, what we allege is that the statement that was made by Defendant Warren to Dr. Henson was one that was equivalent to a situation where a former employer gives a negative review or a negative employment justification or verification or negative statement about their work to a potential employer. Here, once Dr. Wright was no longer employed by the Meyer Foundation, and because she worked in the philanthropic community, the statement to Rags' then-president was one that denied her the opportunity to potentially get a job there, and under the case law we cited, that constitutes a 1981 violation. So, assume for the sake of this argument that I just want to drill down on the breach of contract claim because I'm not so certain about that theory of 1981. How was the statement made a breach of contract by the Foundation as opposed to an act for which Ms. Warren individually could be liable? The contract itself called for a mutual non-disparagement, and as such, the Foundation itself was bound not to disparage Dr. Wright. Under the terms of the contract, the obligation was for not only to tell the officers of the corporation not to disparage, but once those officers were told and then did disparage, that bound the company. If I could use an example, Your Honor. Let's say, for example, the Meyer Foundation had contracted with a vendor to receive services, and as part of that contract, the Foundation indicated that upon receiving the services and the invoice for those services, it would direct its bookkeeper to make payment. The services were rendered, the Foundation itself directed its bookkeeper to make payment, but then the bookkeeper didn't make payment. So now the vendor sues the Foundation that, hey, we didn't get paid, and then the Foundation says, well, wait a minute. All we said we'd do is direct the bookkeeper to make payment. If she pays it or doesn't pay it, that's on her. We're not responsible, notwithstanding the fact that the Foundation got the benefit of those services. And that's what we have here. We have Dr. Wright agreeing not to disparage the Foundation, and she lived up to it. She provided her word. She lived up to her word and gave the Foundation non-disparaging. The Foundation then directed its officer, presumably Defendant Gorham, not Dr. Wright, and yet she does. And we say that because of it, the Foundation is just as responsible as if the bookkeeper didn't pay the bills. Now, I'm certain that under this court's precedent, that if the vendor in that scenario that I came up with sues the Foundation and says that they owe money for the services that we provided, notwithstanding what their bookkeeper may have done or not, that this court would say, you owe the money. You've got the service, and you owe the money. Because you cannot render or read a contract that renders it a nullity. And so there has to be some provision by which Dr. Henson, Dr. Wright can get redressed. And so I hope I've answered Your Honor's question. With regard to... Did you allege a violation of the breach of the duty of good faith and fair dealing? Or you're just alleging a violation of the terms of the non-disparagement provision? I think it's incorporated. I don't know if we set those terms exactly in our complaint. But under this court's jurisdiction, under this court's case law, under this Columbia case law, read into every single agreement is the requirement of a duty of good faith and fair dealing. That may be read into contracts. But alleging a breach of contract, people can allege it in two different ways. They can allege a breach of the terms of the contract. Or they can allege a breach of the implied duty of good faith and fair dealing. But they're usually two separate allegations, I think. Is there a case where we've said that alleging a breach necessarily encompasses both? Well, I don't know. I know we cite cases. We believe that the cases that we cite go to the proposition that when you allege a breach of contract, that that gives fair notice, that it would be either a breach of the specific terms of the contract or a breach of the duty of good faith and fair dealing. And so I don't know that necessarily we're required to state which at the pleading state. And so maybe as we go further, as discovery is allowed, we'll be able to amend our complaint. If that's required. But I don't think at this stage, Your Honor, that that is a requirement. We allege a breach and we set forth why. Let's suppose that breach of the implied covenant of good faith and fair dealing is a separate theory of liability than breach of the expressed terms of the contract. Is it your contention that there is no breach of the express terms of the contract and that it's only a breach of the implied covenant of good faith and fair dealing? No, I mean, I think that there is a breach of the explicit terms of the contract as well. One of the things that the district court did not do is address the term that's in the contract of mutual non disparagement. That term is what it is. It's mutual. It goes both ways. It's not one way and not the other. And so in that sense, yes, we allege that there was a breach of the specific terms of the contract. When Nikki Gorin disparaged Dr. Wright. So I think. I hope I've answered your question. Yeah. How long does the promise to direct last? And here's what I'm thinking. I might direct myself to brush my teeth every day for the rest of my life, but I might be good on that for a few days. But then after a while, I slip up and get out. Have I reached the order to myself? It would say the order is brush your teeth or had tonight that I. Did I. Actually, I didn't really phrase this way. Do you see what I'm getting at? It's not your fault if you don't. I think if you're asking whether or not there's a time limit on how long. Yeah. This particular term of the contract is a much better place. I say that that the requirement lasts forever. That there is a there is a duty, a mutual duty not to disparage one another. Why is that the case? Rather than, oh, we promise to direct our employees and directors not to disparage Dr. Wright. We will direct them today. We will direct them to do that. And after today. No promises. That's not what the terms of the contract say. It doesn't say forever and it doesn't say only for a day. It's mutual. What mutual means. I think a reasonable fact. What mutual means is equal. And so as long as Dr. Wright is bound by the terms of this contract. So is the foundation and its office. And so if. Dr. Wright be sued on her death bed at age ninety nine. Because she's disparaged the Meyer Foundation or any of the officers of the Meyers Foundation. Then likewise, the Meyers Foundation should be required to do the same. I see that I'm over my time. We'll give you a couple of minutes on rebuttal. How about that? All right. Miss Davis. Good morning, Your Honor, and may it please the court. I'd like to address a couple of issues that Mr. Sellers raised in response to some questions posed by the panel. First of all, I agree that the issue here based on the complaint that was filed is whether or not there was a breach of the severance contract. The complaint explicitly. States that Ms. or Dr. Wright has brought this case. Because of a breach of the severance contract. Now, Mr. Sellers, it would like to focus on. The title of section of paragraph 6. Of the severance contract that says mutual non disparagement and completely disregard the substance of paragraph 6. That specifically sets forth the obligations of each of the parties to the severance contract. It seems like you want to look at those sentences, but ignore the name of the provision, the mutual non disparagement. So, both of you only want to look at part. Of the provision what's mutual. About non disparagement under this contract. Sorry, both parties agreed not to disparage and the nature of that obligation is spelled out in the substance of paragraph 6. The foundation did agree not to disparage. What the foundation agreed under the paragraph mutual non disparagement. Was to direct its officers directors and employees with direct knowledge of the revised letter agreement, not to make any false disparaging or derogatory statements. That's not the same. That's not the same thing as an agreement not to disparage. I can tell my kids. To make their bed. But that does not mean the bed is made. And it would not be someone else was if my husband was agreeing to make our bed, it would not be a mutual bed making agreement because all I would do is agree to tell the kids to make the bed, but do nothing to require that it happens or to enforce it. The agreement between the parties was how the foundation could perform its obligation not to disparage when you're dealing with several officers directors and employees and to avoid that paragraph being illusory. The foundation committed to that it would direct its officers directors and employees not to disparage. In order to achieve Dr. Wright's goal of not being disparaged. So, so let's suppose the foundation signs this agreement. And then immediately after the agreement, they send a notice out to all their employees and officers do not disparage Dr. Wright. And then five minutes after they send that notice out, they issue a statement from the board of directors and the president and CEO that says, right was a terrible employee. And she was toxic and we had to fire her, et cetera, et cetera. Have they complied with the contract? Responding to that hypothetical, because that is not what occurred here. But, yes, they would have complied with their obligation under paragraph six. And you think that that's a reasonable construction of the contract because under DC law, isn't that? Like, our 1st obligation is to determine what reasonable people in the position of the parties, knowing all the facts and circumstances would have agreed to. So, you think that if we undertook that exercise, that would be a reasonable construction of the contract? Yes, your honor, it would be especially given the circumstances that Dr. Wright had the opportunity to negotiate the language in the mutual non disparagement clause to the extent that there was any ambiguity that Dr. Wright was concerned about. She could have proposed alternate language to the foundation to to clarify any ambiguity. She did not. She signed this agreement, knowing that the obligation that the foundation committed to was to direct their officers, directors and employees. So, the person signed the agreement on behalf of the foundation was a Dr. Horne, right? She was president CEO and she signed it at the time. She signed it in her capacity as president and CEO of the foundation. And about 30 days after she signed this agreement, she made the statement, right? At least according to correct. That is what is alleged. And so you don't think that there's a plausible argument there, then that at least if anyone on behalf of the foundation shouldn't have been making a statement, it would be the president and CEO and the person who signed the mutual disparagement clause. You don't think that that's a plausible breach of contract theory. There is no evidence that the foundation didn't perform its obligation to instruct and that Ms. Gorin didn't. Knowing as the signatory to this agreement, didn't instruct herself that she would not disparage and not did. So I want to make sure I heard she did or did not instruct herself. There is no there is no allegation that she did not instruct herself or intentionally disregarded this provision that she signed it and then went on and made a comment. Knowing that this, this obligation that the foundation had taken on existed. There's no allegation in the complaint. She'd be the president CEO be the natural person to send out this notice to employees. It could go out from the CEO. We could go out from the CEO. It could go out from the board chair. So it's an open factual question whether if she sent it out, whether she would have sent a copy to herself. There is no factual issue that was raised by Dr. Wright in this case that the instructions were not given. Yeah, but the question is whether Dr. Gorin was instructed not to do it with the person who sent the notice with some was him or herself instructed not to speak because usually that's not how things work. Don't really send it to you. You don't direct yourself to do something. It wasn't that sort of just an open fact question here. That is an open fact issue. But, but Dr. Wright has not alleged that that obligation was not performed. If they had a basis for believing that the foundation did not perform its obligation. It would have been alleged in the complaint. Well, no, it's not what I'm trying to understand is that it sounds like the obligation could be performed. If Dr. Gorin sent this notice out to all the employees. But didn't include herself as a recipient as opposed to the sender. So she didn't receive this instruction herself. She just sent it to everybody else. And then. But she would have been aware of this obligation since she signed the agreement. But the contract doesn't say who's aware. It says all they have to do is send out the instruction. It doesn't matter whether people are under your theory as I take it. It doesn't matter whether people are aware of it when they and they nonetheless making a disparaging statement. But the question is whether she was going south would have been. Directed not to speak disparagingly. If she wasn't directed. If she's speaking as she is the voice of the foundation. And it seems to me there's a problem. With concept of mutual non disparagement. The obligation that the foundation assumed. In paragraph 6 would be to direct. It doesn't obligate the foundation to send anything out in writing. But to make. Officers directors and employees aware. That there are not to disparage. So, so the provision says it's a mutual non disparagement. And then the 1st sentence. Says that Dr. Wright will not make. False disparaging derogatory statements about the foundation. To anyone. Except in the course of a governmental investigation or litigation. And then it says likewise. And then it says the foundation will direct people not to make statements. So, so. The fact that it's called mutual non disparagement. And the foundation. Obligation. Are needed with the word likewise. You think that that. That there's no reasonable construction. Of that language. That would mean. That. A. Or to a fact finder. Good. Could undertake to find liability when the person on behalf of the foundation signing the statement actually makes a signing the contract. They're actually makes a disparaging statement. Correct because the obligations under this agreement. Go to Dr right and to the foundation. They are the parties to this agreement. The doctor right promise to refrain from disparaging anyone. Did Dr right promise promise not to make any disparaging? Yes, she did. Who did she promise not to disparage? She promised not to disparage any person or entity. Any person in the foundation and not to disparage the foundation as an entity, right? Or, or any of their release things. I am trying to figure out why this language. Is the language that was used in the. 1 theory is that it's just boilerplate language. It's it's standard and this happens all time. Another theory is that this language was really. Not very generous to Dr right and that was part of a bargain for negotiation where maybe in exchange for some better part of the contract. Elsewhere, Dr right gave up. Disparagement clause with with more teeth and then the 3rd. Possibility I can only think of 3, but you might be able to think of more. The 3rd possibility is that she just had a really. Or attorney and so let's take that 1 out of it. Let's say that she had a good attorney for the sake of this. Hypothetical do, you know, if this language is boilerplate and if it's not boilerplate. Is it reasonable on the record before us to think that she might have gotten something like a larger severance. Payment in exchange for this not very generous disparagement. Okay. So mutual non disparagement clauses are difficult to negotiate when you're dealing with large organizations like the foundation. Where there are multiple levels and organizations and an inability to pull it to police everybody at each level of the organization. And so, as part of the negotiating process, sometimes in this place, the employee is willing to negotiate language. What is found in paragraph 6, recognizing that the reality is there might be a low level person. For example, a front desk person who makes it. I'm going to interrupt you miss Davis and if my interruption messes up an answer that that you then think is going to be helpful. I'd welcome it. But let me see if maybe I didn't phrase it right. Is this language boilerplate, you know, if this language is. I don't know if it's boilerplate for the foundation, but I do know that frequently when negotiating employment severance agreements. And an employee wants a non disparagement provision. This is a concession that is made because it's. It's the easiest way for the employer to actually take steps to try and ensure that there is no disparagement by key decision makers. But, but you just said in response to my hypothetical that it would be completely consistent with this contract for the board to send out an email to everyone, including themselves. Saying, do not disparage Dr. Wright. And then 5 minutes later, the board sending out an email to the world or posting on Twitter to the world that Dr. Wright is is terrible and disparaging her. Right. Didn't you just answer me that that would be consistent with the contract or did I am I misunderstanding your prior answer? You may have misunderstood my response, or I may have misunderstood the hypothetical. And that the obligation was to direct certain key employees and directors who had knowledge of the severance agreement. Not to make any faults or disparaging comments, so the foundation could send out a directive to that group that subgroup. Shortly thereafter, if the foundation. Then sent out a. Some type of communication that disparage. Dr, right, I don't, I believe that Dr. right at that point. Might have a basis for arguing that there was a misrepresentation. In the negotiation of the agreement as to what the intent was here. That going in that the foundation intended to engage in some type of subterfuge. And fool her into signing this agreement and giving up her rights when they did not intend to. Honor efforts to ensure that she was not disparage. How is that any different than a breach of contract claim? So, the difference is that she would have to allege that the foundation did not intend. To comply or perform the obligation set forth in paragraph 6. Which were intended to. Avoid this or avoid disparagement. Comments derogatory comments being made. About Dr. right. I wouldn't it would be a different claim than what Dr. right has brought. I wouldn't a claim of breaching the implied duty of good faith and fair dealing, not encompass. Exactly what you just raised and seated could be raised. It could encompass that, but that was not alleged in this case. So, going back. DC law does not require an implied duty. Of good faith and fair dealing to be separately alleged as a cause of action. Which is just encompassed within a breach of contract claim. Then. Then at the pleading stage here, she may not have any such facts. At the pleading stage here, she would have. Exactly what you said would be sufficient. Object to a soon after signing disparagement. By the 1 person who absolutely knew. There was a mutual non disparage. But for purposes of a motion to dismiss. The foundation and Ms. Gorin did not have noticed that. Dr. right was attempting to bring a claim of breach of good faith and fair dealing. That's encompasses as as counsel said, comes from his right said, if that's just encompassed with any. Contractual obligation, if he alleges a breach of contract. Breaches of contract, I take 2 forms. The letter of the contract and the implied duty of good faith and fair dealing. We're talking about local law here. So, if district law does not require you. To plead as a distinct cause of action. The implied duty faith, good faith and fair dealing just to be to breach of contract. And that would be met here. For purposes of 12, be 6 dismissed, but Dr. Wright did not plead. A general breach of contract claim here, there were specific allegations to a breach of the explicit. Terms of the severance contract and upon. Being advised of deficiencies in the pleading of that claim. Dr. Wright did not amend the complaint. But 1 of the express terms is mutual non disparate. Correct. That's what I think. Was breached here, whether textually or as a matter of implied duty of good faith and fair dealing. The exact reasons you just said in response to judge Wilkins. But that's if I have any case where that wouldn't suffice under district law. I do not have any case, but we're happy to submit supplemental briefing. Ask you a separate question on this common interest. Question. What evidence is there? That is Goran statement was intended to advance. Or protect the interests of W. R. A, G, or that had a corresponding interest. A similar interest to Dr. Goran. In this situation. Plant establish that their interests were corresponding as opposed to potentially adverse. So, the allegation relates to the fact that. Was the board chair for rag, the Washington regional association. Of grant makers, and that this alleged comment. Was raised during a conversation between the president, Dr. Henson. And miss Goran, in which Dr. Henson mentioned to miss Goran that there was concerns being raised in the grant meeting. Making community about the circumstances of Dr. rights termination. So, that that contact explains. Why doc, why miss Goran. Felt necessary to respond to that question. And explain why the rumors were not true. I thought and correct me if I'm wrong. I thought that the sequence here was that. Miss Goran first raised. It was just a side conversation and miss Goran first raised this. I'm feeling all this heat. And then miss Henson and Dr. Henson respond. Responded. Yeah, there's a lot going around in the community, but concerns here about racial discrimination. And so. As Goran initiates it, Dr. Henson responds, just. Talking about what's going on in the community. And at that point, as Goran says. Oh, well, here's what was going on. Do I have it wrong? The sequencing is correct. The characterization I think I disagree with. In that miss miss Goran mentioned to Dr. Henson again. The board chair and the president that she was she was feeling the pressure. And then Dr. Henson was the 1 who mentioned the fact. That there was discussion in the grant making community about the circumstances of doctor rights termination. From the foundation is committed to. The funding that it does is to root out discrimination. Expose it to root it out to try to prevent it. And is Goran statement were were to justify Miss Goran's. Actions. And in doing so, used terminology. That could be these are all people fact questions, but they could be consistent with. Stereotypical labeling. Of discomfort with successful black women. So, how do we know there's a common interests. Between Miss Goran who's trying to cover. Her decision protect herself from the reaction of the. Those involved in the civil rights community. And those who are dedicated to preventing and rooting out. Discrimination, but if we take a look. At the amended complaint that was filed in Dr. Henson's. Action against Ray, we'll see that she says that the statement that was made. Was merely that there was a negative climate. That was Miss Goran's only comment. Yeah, but this complaint says in this in this complaint, we have the embellishment of that conversation, but the court can take judicial notice of an individual who's not involved. In this dispute and was personally involved in a conversation who said the sole comment was a negative. Are you suggesting we can choose between those 2 versions of events at this stage? I believe with respect to the comment that was made Dr. Henson who had personal knowledge. As the allegations in this disputes, Dr. Wright had no personal knowledge of that of that supposed a conversation until the complaint was filed almost a year later. So, you're saying we should resolve that factual dispute against Miss, right? On the face of the complaint on the face of that complaint. Yes. And another thing is. Common interest doesn't apply. If someone is not acting in good faith. And there are allegations and I hesitate to reaffirm. These are just allegations of this case stage. Nothing's been proven. But there is allegations of. Racially discriminatory atmosphere at the foundation under Miss Gorin combined with an allegation of differential treatment. A white person who was discharged for a similarly ambiguous reasons didn't sort of share the vision. And so with those together. Why is that not enough to raise at the pleading stage? A factual question on good faith for purposes of the common interest. That that is not sufficient because those supposed events are not closely related to the time when this alleged conversation took place. It was like 30 days. We also have the fact going back to what I stated earlier about the relationship between Miss Gorin and Dr. That this conversation would not have occurred in the context of where there would be any type of racial animus. And so we also have, if we're going to look at that other complaint, Miss Henson accusing Miss Gorin of leading to another racially discriminatory discharge. So we've got two allegations, racial discriminatory discharge and allegations of the complaint about a racially discriminatory environment. And that's in your position. It's not enough. To plead. A question of malice for purposes of the. Good faith prong of the common interest. That's. Yeah, allegations raised solely in litigation in this context should not be sufficient. You have a case that's what more why why these allegations are not sufficient. But I'm going to back up. I assume you will agree that racially discriminatory comments. Constitute the lack of good faith. For purposes of the common interest. Yes, you don't have good faith if you're making your statements out of racial animus. If there if there is racial animus that can be inferred from the comments. Yes, that's correct. And then, and so it can be inferred from the comments, but also there's allegations. So, and there's allegations of other allegations of racially discriminatory conduct by. The speaker in this case, Miss Gorin, again, just allegations, but those allegations are there. That is not enough in your view to raise a question to sufficiently show. At the 12th, the sixth stage. State a claim. There was not good faith for purposes of the common interest privilege. Yes, I do not believe those alleged incidents are sufficient. For purposes of the section 1981 claim that is brought with respect reference to a severance agreement. Those allegations were made in the context of the employment relationship. And in fact, Dr. Wright alleges. Tries to separate the Meyer foundation. From Miss Gorin and. So, to the extent that allegation is that. The foundation discriminated against her based on a race. I don't believe those allegations are sufficient. Define liability under section 1981. No, but she has a separate. I'm sorry. I wasn't clear. She has a separate defamation claim. I apologize. I went back to 1981 claim. That's my fault. I was. I still don't believe that those comments are sufficient because or incidents, because they are not tied to Miss Gorin. The talk is talking about the foundation. And the atmosphere at the foundation. All right. And you kept you up a long time. So, thank you. Thank you very much. And Mr. sales will give you a 2 minutes for rebuttal. Your honors, I want to start with the common interest privilege. And I think you're on it. You hit on the point that we raised in our brief that. The issue of common interest, if you get past. The bad faith in the comment that. That Nikki Gorin may. Hence, and then you look at the common interest. That is not common. You know what? What Nikki Gorin is trying to do is cover her own self. Trying to cover her own image. She was the head. The board. The director. The board. She was the head of the board of directors. For. Right. At the time that Dr. Henson came into. There had just been a climate survey. Had been taken. Where it found that the climate. African-American employees and. It's hard. You had. A. Employee. African-American employee. Who was required. Force to give up. Her seat. To a white. Contract. I don't know. But a white contract. You had. A number of African-American employees. At rag. Who. Said that rag. Was not. A place. Of racial equity. But there was a segregated parking lot. And that's when Dr. Henson took over. Okay. And that organization. You mean when Dr. Gorin took over. No, no, no. Dr. Henson. She took over rag. As. As the. CEO. Not the board of directors. But the CEO. She took over. That was the climate. It was horrible. She was brought in. To bring racial. Equity. Well, I'm talking about the climate. At the foundation. Which is what your complaint. Talks about. And it says. Under. Defending Gorin's. Leadership. And then details. The. I'm looking at the. Hence. The doctor. Well, I'm going to talk about your complaint. Well, I know. I get it. What I'm suggesting is that the motivation. The motivation. From. From. Nikki Gorin. To make those comments. Was not in. In rags. That's it. It was a Nikki Gorin's message. So the idea that the two had a common interest. Is just. From the from this record. You cannot find. It's not there. That was. That's the only point I was making. So I went back. To where. When Dr. Henson took over. Rad. It was in a. It was in a very bad place. It's a very discriminatory place. Just like. When. Dr. Wright. Obtained. Her position. At the Myers Foundation. There had been right before. Dr. Wright was brought in. There had been a climate search. At the Myers. That showed that African-American employees. At the Myers Foundation. Found. That it was a toxic. Working environment. For African-Americans. Is your statement right there? Just. Violate. Dr. Wright's obligation. Under the mutual. Non-disparagement paragraph. For his. It's in a complaint. Does your complaint. Violate the agreement. No. Because it's in the complaint. So any statement. In a complaint. Is. Not. Permitted. I mean, if you're involved in litigation. Pursuant to. The agreement. You're allowed to truthfully testify. Truthfully state. What the allegations are. So it does not violate. The terms of the agreement. If it were outside. The context of the complaint. Would you. What you just said have violated. The mutual non-disparagement. Yeah. It would. Yes. Because this is in litigation. Over. Overrides that. Yeah. I mean, you're allowed to tell. You're allowed to testify. There's an exception. For any litigation. In the non-disparagement. Clause. Yeah. This kind of. Right. And so. The idea. Of. Nikki. Born. Making these statements. As it being. In the common interest. Is just simply. Not. You can't. Get that. On these facts. At a minimum. It raises a question. As to what is. The common interest. Who does. I just wanted to make that. Who do the releases. Refer to. Again. The mutual non-disparagement. Paragraph. It's. It's a 27. Of the appendix. That says. You. Agree. You will not make. Any. Disparaging statements. Regarding the foundation. Or any of the other. Release. I'm just. I really. It's just a total. I don't. I don't know. The answer. To that. I think. I think. What would that. First. Who are the. Employees. Of the. My foundation. Which would include. Everybody. Who works. So. J. A. 26. As its. Respective predecessors. Successors. Affiliate. Subsidiaries. Parent companies. And science. And all of their respective. Past and present. Directors. Officers. Partners. Members. Stockholders. Plan administration.  Insurers. Agents. Attorneys. And employees. The cover is. A wide. Spot. Now. In terms of. I think. Your honor. You're going to need to wrap up here for us. Okay. The last point. Is. To the extent. That. The. Agreement. Mutual. Disparagement. Language. Is in. You know. Creates. An imbalance. In the. Or like. I'm not. Thinking. The right term right now. But. If there's ambiguity. I'm sorry. If there's ambiguity. In the language of the contract. It must be. Construed against the draft.  The drafter. Was. Nikki Gorman. And the foundation. And. We believe that. As a result. Again. As you look. The breach of. Contract. Then you have to look at. Any ambiguity. Has to be looked at. That. Thank you very much. The case is submitted.
judges: Millett, Wilkins, Walker